BERNSTEIN, BERNSTEIN, WILE & GORDON *v.* ROSS

1. PARTNERSHIP—RIGHTS—AGREEMENT—STATUTES.

All partners have equal rights in the management and conduct of a partnership business, except those rights and duties of the partners in relation to the partnership as shall be determined by agreement between them (CL 1948, § 449.18).

2. PARTNERSHIP—RIGHTS—MANAGEMENT—AGREEMENT—STATUTES.

Partnership agreement by which the two senior partners of a four-man partnership own a 90% share and have exclusive management is valid under the section of the Uniform Partnership Act providing that all partners have equal rights in the management and conduct of the partnership business, except those rights and duties of the partners in relation to the partnership as shall be determined by agreement between them (CL 1948, § 449.18).

REFERENCES FOR POINTS IN HEADNOTES

[1–4]  40 Am Jur, Partnership § 16 *et seq.*
[3]  40 Am Jur, Partnership § 117.
[5]  40 Am Jur, Partnership § 233 *et seq.*
[6, 7]  36 Am Jur, Monopolies, Combinations, and Restraints of Trade § 50 *et seq.*
Enforceability of restrictive covenant, ancillary to employment contract, as affected by territorial extent of restriction. 43 ALR2d 94.

3. PARTNERSHIP—RIGHTS—AGREEMENT—MUTUALITY.

Partnership agreement by which a junior partner having a 5% share in the partnership may be discharged by the senior partners is not lacking in mutuality of obligation where they are obligated if they elect to discharge him, to use the partnership contract formula dealing with fees, accounts receivable, and work in progress to reimburse him.

4. PARTNERSHIP—INTENTION OF PARTIES.

The intention of the parties to a partnership contract is of prime importance in considering whether a partnership exists, and where the parties referred to each other as partners, were co-owners, and shared in the gross profits, the trial court could properly determine that the parties intended that one having a 5% share of the partnership be a partner.

5. PARTNERSHIP—AGREEMENT—DISPOSITION OF INTEREST.

Partners may by agreement provide for the disposition of their interest in the partnership.

6. CONTRACTS—AGREEMENT NOT TO COMPETE—PROTECTION.

A contract by which a person agrees not to engage in a profession or business is illegal except where the only object of the restraint imposed by the contract is to protect the vendee or transferee of a profession or business, or its good will, sold and transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly (CL 1948, § 445.766).

7. PARTNERSHIP—CONTRACTS—AGREEMENT NOT TO COMPETE—ENFORCEABILITY.

A partnership contract of an accounting firm by which a partner who voluntarily withdrew agreed not to engage in the practice of public accounting within a radius of 50 miles for 3 years is unenforceable against a partner who originally came to the firm as an employee having no clients of his own and later bought into the partnership, because the withdrawing partner had no singular or separate business, profession, or good will to sell so as to fit into the exception of the statute prohibiting agreements not to compete (CL 1948, §§ 445.761, 445.766).

Appeal from Ingham, Sam Street Hughes, J. Submitted Division 2 November 6, 1969, at Lansing. (Docket No. 5,677.) Decided February 25, 1970.

Complaint by Bernstein, Bernstein, Wile & Gordon, a partnership, against Martin H. Ross for breach of a partnership agreement. Judgment for plaintiff. Plaintiff appeals. Defendant cross-appeals. Affirmed.

*Hubbard, Fox, Thomas & Born* and *Albert L. Lieberman,* for plaintiff.

*Sinas, Dramis, Brake & Turner,* for defendant.

Before: J. H. GILLIS, P. J., and McGREGOR and V. J. BRENNAN, JJ.

McGREGOR, J. Defendant, after working for plaintiffs for about two years, entered into a written agreement with plaintiffs' accounting partnership, whereby he purchased a 5% interest therein for the sum of $23,456.09. No initial payment was made as the agreement provided for payment out of defendant's share of the profits. Two instruments, one titled "Partnership Agreement" and the other "Agreement for Sale of Partnership Interest" were executed by the parties. Defendant thereafter became increasingly dissatisfied with the arrangement, alleging inequities in management and profits, and about a year later, defendant voluntarily terminated his relationship with plaintiff partnership and began practicing public accounting locally. A no-competition clause in the partnership contract stated:

"No partner who shall voluntarily withdraw from the partnership * * * shall, for a period of three years * * * engage in the practice of public accounting within a radius of 50 miles."

At the time of separation, the record indicates that defendant's accumulated earnings were $6,625.81, applicable to the purchase account. The purchase

price of $23,456.09, less the accumulated earnings of $6,625.81, left a balance due to plaintiffs of $16,-830.28. Under the terms of the partnership contract, plaintiffs had the right to repurchase the 5% share of the withdrawing defendant for only 2–1/2% of his capital account, which at that time and under the provisions of the contract, amounted to $12,696.80. The trial court subtracted the repurchase amount from defendant's debt, and entered judgment for plaintiffs in the amount of $4,133.48. The trial court also declared the covenant not to compete unenforceable because it was in violation of public policy.

Plaintiffs appeal, seeking damages for defendant's alleged breach of the covenant not to compete as an alternative to specific enforcement. (They apparently feel it is impractical to have specific performance at this point in time.)

Defendant cross-appeals, contending that the alleged partnership agreement was invalid, and therefore, that the judgment of $4,133.48 was in error.

Defendant attacks the validity of the partnership on two grounds. First, he contends that in a four-man partnership, as here involved, where two senior partners own 90% and have exclusive management, including the power to discharge the lesser partner without cause, the contract is invalid for lack of mutuality. The Uniform Partnership Act controls. CL 1948, § 449.18 (Stat Ann 1964 Rev § 20.18). The statute provides that all partners have equal rights in the management and conduct of the partnership business, except those rights and duties of the partners in relation to the partnership as shall be determined by agreement between them. In this signed agreement, the intent is unambiguous: defendant agreed to relinquish all management to the senior partners. The result is a specific agreement between

the parties and, under the statute, is valid and binding.

Defendant's contention that the agreement lacks mutuality because he could be discharged on a whim and would have no recourse is not borne out by the record. Simply stated, mutuality of obligation means that both parties to an agreement are bound or neither is bound. Here, both parties are bound. Defendant here contributes his knowledge and labor for a stated draw or salary and a share of the profits. Plaintiffs can discharge defendant, but if this happens, they are contractually bound to use the partnership contract formula dealing with fees, accounts receivable, and work in progress to reimburse defendant. Under the statute* and the rules of mutuality of obligation, these defenses to the existence of a partnership cannot be sustained.

Secondly, defendant contends that a person owning 5% of the capital and receiving a salary, without managing authority, is an employee rather than a partner. There is no general rule which will afford an automatic solution of the question of the existence of a partnership relation, as distinguished from an employment relationship, but such solution turns upon the facts and circumstances of association between the parties. *Moore* v. *DuBard* (1947), 318 Mich 578. The intention of the parties is of prime importance in considering whether a partnership exists. *Lobato* v. *Paulino* (1943), 304 Mich 668. In the present case, the parties referred to each other as partners. They were co-owners and shared in the gross profits. There is ample record testimony and evidence from which the trial court could determine that the parties intended a partnership rather than an employment contract to exist, as it said in its findings:

---

* CL 1948, § 449.18 (Stat Ann 1964 Rev § 20.18).

"The court finds that defendant was a member of a partnership."

This is reasonable and not clearly erroneous, in view of the record. GCR 1963, 517.1. When a partnership exists, the partners may by agreement provide for the disposition of their interest in the partnership. *Kenyon* v. *Tidey* (1946), 314 Mich 205; *Gertz* v. *Fontecchio* (1951), 331 Mich 165. The trial court determined that the defendant owes plaintiffs $4,-133.48 and the judgment is affirmed in that respect.

Michigan, through statutory enactment, has established rules and exceptions concerning restraints of trade. CL 1948, § 445.761 (Stat Ann 1962 Rev § 28.61) declares the illegality of contracts not to engage in business:

"Sec. 1. All agreements and contracts by which any person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void."

The exceptions to § 445.761 are set forth in CL 1948, § 445.766 (Stat Ann 1962 Rev § 28.66):

"Sec. 6. This act shall not apply to any contract mentioned in this act, nor in restraint of trade where the only object of restraint imposed by the contract is to protect the vendee, or transferee, of a trade, pursuit, avocation, profession or business, or the good will thereof, sold and transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly."

A review of events leading to the partnership agreement is significant. Defendant was plaintiffs' employee; he received some training from plaintiffs,

and was moved to Lansing. He had no clients of his own. Later, he purchased a share of the partnership and became a member. The statutes do not favor covenants not to compete except where a business or profession is sold, including its good will. Defendant, being a partner with a strict fiduciary relationship to the firm, possessed no singular or separate business, profession or good will to sell to the partnership. The trial court held that no sale had been made to the partnership or the remaining partners.

"The court finds that the defendant [Martin Ross] was a member of the partnership, that he did not 'sell' any business to the partnership, that he 'bought into' the partnership.

"The court is convinced that the agreement not to compete is against the public policy of Michigan and is, therefore, unenforceable. The exceptions do not assist the plaintiff in this case. It did not buy a business or profession from the defendant."

A close reading of the controlling statutes indicates the interpretation of the trial court, and the decision based thereon is, under the facts and evidence, both logical and reasonable.

There is sufficient testimony and evidence in the record to support the court's finding that defendant could not work amicably with his partners, and decided to withdraw, according to the partnership contractual early-retirement plan. Under these conditions, there was no sale or transfer of a business, profession or good will, and the covenant could not be enforceable according to the statute. CL 1948, § 445.766 (Stat Ann 1962 Rev § 28.66).

Judgment of the lower court affirmed on all issues. Costs to appellee.

All concurred.