Newman v. Raleigh Internal Medicine Assoc.

WILLIAM N. NEWMAN v. RALEIGH INTERNAL MEDICINE ASSOCIATES, P.A.

No. 8710SC282

(Filed 15 December 1987)

1. **Master and Servant § 8.1— employment contract—post-termination benefits— engaging in "similar" medical practice**

Even though defendant professional corporation offers a broader scope of medical practice areas than plaintiff physician's present medical group offers, plaintiff's present practice is "similar" to defendant's practice within the meaning of a provision of plaintiff's employment contract with defendant precluding post-termination benefits if plaintiff engages in a "similar" practice in Wake County within three years after beginning employment with defendant.

2. **Contracts § 7.1; Master and Servant § 11.1— post-termination compensation agreement not covenant not to compete**

A provision in plaintiff physician's employment contract with defendant professional corporation precluding post-termination benefits if plaintiff engages in a "similar" medical practice in Wake County within three years after his initial employment with defendant was not a covenant not to compete subject to strict public policy limitations.

3. **Master and Servant § 9— post-termination compensation—competency of affidavit**

Where a physician's employment contract provided for post-termination benefits for a period of ninety days after termination if the physician did not engage in a "similar" medical practice in Wake County within three years after beginning employment with defendant professional corporation, the restriction on competitive employment did not expire at the end of ninety days, and an affidavit comparing plaintiff's statistics and procedures during his employment by defendant with those during other employment in the ten months following his departure from defendant was not incompetent in a summary judgment hearing because it did not restrict such comparison to statistics and procedures within the ninety-day period.

APPEAL by plaintiff from *Ellis, Judge.* Order entered 12 February 1987 in Superior Court, WAKE County. Heard in the Court of Appeals 1 October 1987.

*Leboeuf, Lamb, Leiby & MacRae by Peter M. Foley and Albert D. Barnes for plaintiff appellant.*

*Moore & Van Allen by Richard W. Evans and Thomas W. Steed, Jr., for defendant appellee.*

COZORT, Judge.

Plaintiff brought this action to recover post-termination benefits pursuant to his employment contract with defendant. Defendant denied liability and moved for summary judgment on the grounds that plaintiff had forfeited these benefits. From the trial court's order granting defendant's motion, plaintiff appeals. We affirm.

Raleigh Internal Medicine Associates, P.A. (RIMA), is a Raleigh professional corporation specializing in internal medicine and various internal subspecialties, such as cardiology, hematology, gastroenterology, pulmonary disease and allergy care. RIMA offers both primary medical care, where service is offered directly to a patient, and referral care, where a patient is referred to one of RIMA's specialists by another physician.

On 11 July 1983, plaintiff, a physician, entered into an employment contract with RIMA and became associated with its cardiovascular division. While employed by RIMA, plaintiff's primary area of practice was invasive cardiology, but he also practiced a significant amount of general cardiology and a small amount of general internal medicine. The majority of plaintiff's services were provided to patients referred from other doctors.

Plaintiff left RIMA's employ on 31 July 1985, and on 1 August 1985, he began working for Wake Heart Associates (WHA), also in Raleigh, where he has worked since that time. Plaintiff's practice at WHA is generally the same as his practice at RIMA, but on a smaller scale. He practices primarily invasive cardiology, just as he had at RIMA, as well as some general cardiology and general internal medicine. Additionally, all of the services offered by WHA were available from RIMA at the time plaintiff left. During plaintiff's first ten months at WHA, almost ten percent of his patients were former patients at RIMA.

On 21 March 1986, plaintiff commenced this action against RIMA to recover post-termination benefits pursuant to paragraph 11(c) of his employment contract. Paragraph 11(c) provides in part:

If the Employee's employment is terminated by either party for reasons other than cause, death or disability, the [sic] the Corporation shall continue to pay Employee's full base salary for the first thirty (30) days following Employee's

departure, three-fourths (¾) of Employee's base salary for the second thirty (30) day period, and one-half (½) of Employee's base salary for the third thirty (30) day period thereafter. At ninety (90) days, following departure the productivity bonus formula will be computed and final settlement between departing Employee and Corporation will be made.

RIMA denied liability under paragraph 11(c) on the grounds that plaintiff had forfeited his right to post-termination benefits under the terms of paragraph 11(e) of the employment contract. This paragraph provides:

(e) *Limitation of Practice.* If Employee voluntarily terminates Employee's employment within three (3) years of Employee's initial employment by the Corporation and in Wake County, North Carolina, directly or indirectly engages in, owns, manages, operates, controls, is employed by, connected with, or participates in any practice or business *similar* to the type of practice or business conducted by the Corporation at the time of termination, the Employee shall forfeit any salary continuation beyond his base salary draw up to the date of termination. (Emphasis added.)

RIMA contended that by engaging in employment at WHA "similar" to what he had done at RIMA, plaintiff was not entitled to any of his post-termination benefits.

Following extensive discovery, plaintiff moved for partial summary judgment on the issue of RIMA's liability to him, but not on the issue of damages. RIMA responded by filing a motion for summary judgment as to the entire complaint on the grounds that plaintiff had forfeited his benefits.

After a hearing, the trial court denied plaintiff's motion, granted RIMA's motion, and dismissed plaintiff's claim with prejudice. From this order, plaintiff appeals.

Plaintiff argues that the trial court erred in granting defendant's motion for summary judgment. We disagree.

The test on a motion for summary judgment made under N.C. Gen. Stat. § 1A-1, Rule 56 and supported by matters outside the pleadings is whether, on the basis of the materials presented

to the court, there is any genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law. *Barbour v. Little*, 37 N.C. App. 686, 247 S.E. 2d 252, *disc. rev. denied*, 295 N.C. 733, 248 S.E. 2d 862 (1978). "A party may show that there is no genuine issue as to any material facts by showing that no facts are in dispute." *Best v. Perry*, 41 N.C. App. 107, 110, 254 S.E. 2d 281, 284 (1979).

In the case *sub judice*, plaintiff and RIMA disagree as to the proper interpretation of paragraph 11(e) of the employment contract. Therefore, an issue of fact has been presented. However,

> [e]ven where, . . . an issue of fact arises, a party may show that it is not a genuine issue as to a material fact by showing that the party with the burden of proof in the action will not be able to present substantial evidence which would allow that issue to be resolved in his favor. [Citations omitted.] Therefore, . . . [it] is not a genuine issue as to a material fact if it can be shown that the plaintiff cannot present a forecast of substantial evidence which will be available to her at trial and which would allow that issue to be resolved in her favor.

*Id.* We hold that plaintiff would not have been able to present evidence at trial which would have allowed a decision in his favor.

[1] Paragraph 11(e) of the employment contract precludes plaintiff's right to post-termination benefits if, within three years of his initial employment with RIMA, he engages in a post-termination practice in Wake County that is "similar" to his practice at RIMA. It is undisputed that plaintiff began his post-termination practice in Wake County within three years of his initial employment at RIMA. Plaintiff contends, however, that the forfeiture of benefits under paragraph 11(e) occurs only if he joins a group practice which offers all, or nearly all, of the services and subspecialties offered by RIMA. Since RIMA is a full service primary care organization offering a broad range of medical care, plaintiff argues that in no way can his practice at WHA, which is primarily a hospital-based, consultative, invasive cardiology practice, be considered similar to RIMA.

We hold that plaintiff's practice at WHA was "similar" to RIMA's practice within the meaning of paragraph 11(e), even

though RIMA offers a broader scope of practice areas than WHA offers. Under plaintiff's purported interpretation of paragraph 11(e), two practices would have to be virtually identical in order to be similar. Clearly, this is not what the contract provision intends. "Similar" is a commonly used word, with an easily ascertainable definition. The American Heritage Dictionary, Second College Edition (1985), defines similar as: "Related in appearance or nature; alike though not identical." We believe the meaning urged by plaintiff is too restrictive and is inconsistent with the commonly understood meaning of "similar."

Plaintiff also argues that the word "similar" creates an ambiguity in paragraph 11(e), which must be strictly construed against RIMA because they were the drafters of the contract. *See Contracting Co. v. Ports Authority*, 284 N.C. 732, 202 S.E. 2d 473 (1974). We have found, however, that the meaning of the word "similar" is clear and unambiguous as it is used in plaintiff's contract. The rule requiring that an ambiguity be construed against the drafter of a contract does not apply.

[2]  Plaintiff's argument also implies that paragraph 11(e) is a covenant not to compete subject to strict public policy limitations. We disagree.

A covenant not to compete is a provision embodied in an employment contract whereby an employee promises not to engage in competitive employment with his employer after termination of employment. Such a covenant is valid and enforceable only if given for a valuable consideration and if the restrictions are reasonable as to terms, time and territory.

*Hudson v. Insurance Co.*, 23 N.C. App. 501, 502, 209 S.E. 2d 416, 417 (1974), *cert. denied*, 286 N.C. 414, 211 S.E. 2d 217 (1975) (citations omitted).

Paragraph 11(e) is not a covenant not to compete; it is merely a "Limitation of Practice" provision. Plaintiff did not promise not to engage in competitive employment. He agreed to forfeit his rights to any post-termination benefits should he decide to engage in a similar practice in Wake County within three years after beginning employment with RIMA. The provision gives RIMA no right to interfere with plaintiff's post-termination practice. It allows RIMA to avoid paying plaintiff additional sums if he

decides to engage in a similar practice. This Court in *Hudson* stated that a "forfeiture, unlike the restraint included in an employment contract, is not a prohibition on the employee's engaging in competitive work . . . . 'A restriction in the contract which does not *preclude* the employee from engaging in competitive activity, but simply provides for the loss of rights or privileges if he does so is not in restraint of trade . . . .' " *Id.* at 503, 209 S.E. 2d at 418 (emphasis added) (citation omitted). Therefore, such limitations, as the one in plaintiff's contract, are not subject to the strict scrutiny with which courts examine such covenants.

[3] Finally, plaintiff argues that one of RIMA's affidavits submitted in support of its motion for summary judgment was not based on competent evidence and should have been disregarded by the trial court. We disagree.

In support of its motion for summary judgment, RIMA submitted the affidavit of Dr. David Allen Hayes, President of RIMA. In that affidavit Hayes stated that he had compared the procedures and statistics of plaintiff while at RIMA with those of plaintiff in the "ten months immediately following [his] departure from RIMA for Wake Heart Associates." The purpose of this comparison was to show the similarity between plaintiff's practice at RIMA and his practice at WHA. Plaintiff contends, however, that this information should be disregarded, because the ten-month time frame in Hayes' comparison is irrelevant to the Limitation of Practice provision. He contends that since there is no time restriction in paragraph 11(e), the ninety-day period of paragraph 11(c), which requires that post-termination benefits be paid for the first ninety days after departure, should apply to it. Under this theory, plaintiff argues that the restriction on competitive employment would expire at the end of ninety days, so that if he waited ninety days before entering another practice, he would have a clear right to the post-termination benefits. Thus, plaintiff argues, the Hayes' affidavit is incompetent because Hayes did not restrict his analysis to those procedures and statistics occurring within the first three-month period.

We hold that the evidence in the affidavit was admissible and was properly considered. Nothing in the employment contract indicates that the restrictions of paragraph 11(e) are to expire nine-

ty days after termination. Nothing in the contract guarantees an employee the absolute right to post-termination benefits if the employee refrains from engaging in a similar practice for only a ninety-day period. An employee who wishes to engage in a similar practice in Wake County may receive post-termination benefits only if he waits for more than three years after his initial employment with RIMA. This restriction is the only relevant time period applicable to paragraph 11(e). Therefore, the affidavit was properly considered as evidence of plaintiff's post-termination activities.

In summary, we hold that the pleadings and affidavits in this case reveal no genuine issue as to a material fact, and the defendant is entitled to summary judgment. The order of the trial court is

Affirmed.

Judges JOHNSON and GREENE concur.